T. I. Welch and Hazel A. Welch, et al. [1] v. Commissioner. Welch v. Commissioner
Docket Nos. 88953, 88955, 93887, 93888, 93932, 93933. Memo. 1963-38.
United States Tax Court
T.C. Memo 1963-38; 1963 Tax Ct. Memo LEXIS 306; 22 T.C.M. (CCH) 151; T.C.M. (RIA) 63038; February 11, 1963
*306 Held, change in method of accounting was initiated by the partnership in which petitioners are partners. The year of change was 1957 whereby the partnership changed to the accrual method of accounting. Wentworth T. Durant, Esq., Davis Bldg., Dallas, Tex., Robert E. Davis, Esq., and Leslie C. Hackler, Jr., Esq., for the petitioners. J. C. Linge, Esq., for the respondent. BLACK
Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax of the petitioners as follows: P. I. Welch and Hazel A. Welch
Dkt. No.
Year
Deficiency
93888
1955
$ 3,373.94
1956
1,967.41
88953
1957
17,452.30
93932
1958
2,955.28
1959
922.44
Thompson I. Welch and Estate of
Jocelyne J. Welch, Deceased
93887
1955
$ 3,614.79
1956
1,700.88
88955
1957
15,245.14
93933
1958
1,624.91
1959
1,041.72
*307 The issue presented for determination is whether or not petitioners initiated a change in the method of accounting of Welch Grain Company, a partnership, in the year 1957. Findings of Fact A stipulation of facts, together with exhibits attached thereto, was filed by the parties and is incorporated herein by this reference. T. I. and Hazel A. Welch are husband and wife residing in Dalhart, Texas. They filed their joint individual income tax returns for the years 1953 to 1959, inclusive, with the district director of internal revenue, Dallas, Texas. Amended returns for 1954, 1955, and 1956 were filed on December 31, 1957. Thompson I. and Jocelyne Welch were husband and wife and were residing in Dalhart, Texas, until she died in April 1959. Joint individual income tax returns for the years 1953 to 1959, inclusive, were filed with the district director of internal revenue at Dallas. Amended returns for 1954, 1955, and 1956 were filed on December 31, 1957. Welch Grain Company, hereinafter referred to as the Company or the partnership, is a partnership formed in 1947 and it is owned equally by Thompson and his father, T. I. Welch. The partnership filed partnership returns for *308 the years 1954 to 1959, inclusive, with the district director of internal revenue at Dallas. Amended returns for the years 1954, 1955, and 1956 were filed on December 31, 1957. During the years in issue the Company was in the business of storing wheat and milo in its grain elevator in Dalhart, Texas, and in the operation of a feed mill. The books and records of the Company were maintained on the cash method of accounting from its inception until 1957 at which time they were maintained on the accrual basis. In 1956, William R. Martin, an agent of the Internal Revenue Service, examined the tax returns filed by T. I. and Hazel Welch for the years 1953 and 1954, which reported income received from the Company. Agent Martin made no adjustment to the income which they reported as received from the Company for those years, after examining the Company's banking records. In 1957, George A. Black, an agent of the Internal Revenue Service, made an examination of the returns, books, and records of petitioners and the Company. Agent Black prepared his report dated July 22, 1957, in which he proposed increases in the partnership income for the years 1954, 1955, and 1956 by the total amount *309 of $66,137.22. His report states that one cause for the change was as follows: By reducing purchases, particularly in 1955, the partnership has made what was tantamount to an inventory inclusion, however, such reduction was not in an amount sufficient to cover the entire inventory, only that portion covered by loans. The changes are caused by reflecting the correct inventories, disallowance of depreciation claimed beyond the period during which the cost or basis was recovered in full. A few other small reductions of expense and increase in income were made. The report also made the following "Explanation of Items" for the year ended December 31, 1954: Where inventories are an income determining factor, it becomes necessary that such be considered in determining cost of sales. Similar explanations were set forth in the report for each of the years 1955 and 1956. Agent Black's report adjusting the partnership income for 1954, 1955, and 1956 allowed no opening inventory for the year 1954, thereby increasing partnership income. Agent Black estimated closing inventories for 1954, 1955, and 1956 by spreading the 1956 closing inventory over 1954, 1955, and 1956 in approximately *310 equal amounts. The books and records of the Company showed grain on hand and accounts receivable at the close of each taxable year as follows: Year
Grain
Receivables
1953
$ 61,320.23
$ 8,161.84
1954
80,911.85
16,229.60
1955
138,510.54
27,820.41
1956
104,105.00
35,670.17 No inventories or receivables appeared on the original income returns filed by the Company for these years. On certain occasions the Company would borrow money from a bank to purchase grain. Negotiable warehouse receipts were given to the bank as security for the loan. If any loans to the bank incurred in this manner were outstanding at the end of the taxable year, the partnership would consider that grain as owned by the bank and not as having been purchased by the partnership. The partnership, for purposes of reporting income, would not treat the amount so paid for such grain as a cost during that year and this treatment thereby resulted in an increase in partnership income by decreasing costs. The only year in which an actual adjustment was made which affected reportable income was in 1955. This treatment was that referred to in Agent Black's report as that which was "tantamount *311 to an inventory inclusion." The only account the Company owed was to the bank, which account was considered to be a note payable. There were no accounts payable that related to inventory since grain was normally paid for soon after harvest. Waivers of restrictions on the assessment and collection of deficiencies in tax for the years 1954, 1955, and 1956 (Form 870) as computed in Agent Black's report were signed by petitioners and the Company and submitted to the district director at Amarillo, Texas, field audit group, on July 22, 1957. Thompson signed for the Company a Form 875 "Acceptance of Examining Officer's Findings by a Partnership or Fiduciary," disclosing an increase in amount of income which had been reported by the Company as follows: Year
Increase in Income
1954
$23,503.51
1955
22,594.85
1956
20,038.86 Form 875 was prepared by Agent Black and bears a notation "7-12-57 GAB." A certified public accountant in Amarillo prepared the amended returns filed on December 31, 1957, for petitioners and the Company for 1954, 1955, and 1956. The accountant also prepared the returns for 1957 and subsequent years. The Company's amended returns for 1954, 1955, *312 and 1956 started each year with the ordinary net income figures shown in Agent Black's report, added for each year one-third of the increase in accounts receivable from January 1, 1954, to December 31, 1956, and subtracted for each year one-third of the beginning inventory as of January 1, 1954. Agent Black advised the Company that its returns for 1957 and subsequent years should include full inventories. He prepared a statement of inventories for 1957, delivered it to the Company, and directed that it be given to its accountant for the preparation of its 1957 return. The Company for 1957, 1958, and 1959 kept its books and reported income on an accrual basis. During 1958, L. A. Leediker, an agent of the Internal Revenue Service, examined the amended returns of petitioners and the Company for the years 1954, 1955, and 1956. Agent Leediker's report dated October 7, 1958, proposed no change in the partnership income increase proposed by Agent Black's earlier report for the year 1954. Agent Leediker proposed increases in partnership income of $27,820.41 for 1955 and $7,849.76 for 1956 above the adjustments proposed by Agent Black. Agent Leediker's report states under principal causes *313 of changes the following information: Principal causes of changes - Inclusion of accounts receivable balances due to change in accounting method from the cash basis to the accrual basis without permission from the Commissioner - All other items have been examined and adjusted in prior Audit. No further examination was made. During 1959, William A. Culberson, Jr., an agent of the Internal Revenue Service, examined the returns of petitioners and the Company for the years 1954 to 1957, inclusive. His report dated December 31, 1959, proposed adjustments to Agent Black's report of July 22, 1957, to decrease partnership income in 1954, 1955, and 1956 by the respective amounts of $22,475.07, $60,111.59, and $21,518.34 and to increase partnership income for 1957 by $42,393.25. Agent Culberson's report states under principal causes of changes the following information: The principal cause of change is due to correction of the Prior Revenue Agent's Report and computation of income under Sec. 481 of the 1954 Int. Rev. Code when taxpayer changed his method of accounting in 1957. On June 13, 1960, statutory notices of deficiency were mailed to petitioners determining *314 overassessments in tax for the years 1953 through 1956 and a deficiency in tax for the year 1957 (Docket Nos. 88953 and 88955). The deficiency notices dated June 13, 1960, were based on Agent Culberson's report and reversed all of the adjustments made by Agent Black for the years 1954, 1955, and 1956, returned the Company to the cash method of accounting for those years, and determined that the Company "changed its method of accounting during the taxable year ended December 31, 1957." The statutory notice issued to T. I. and Hazel Welch on June 13, 1960, determined overassessments for the years 1953 to 1956, inclusive, and a deficiency for 1957. Their share of the partnership income for 1957 was increased $21,196.63 which is the difference between the $24,042.57 reported on their return and $45,239.20. Adjustments to Company income for the taxable year ended December 31, 1957, are explained in Exhibit H of the statutory notice, which exhibit is incorporated herein by reference. A statutory notice was also issued to Thompson and the estate of Jocelyne J. Welch, deceased, on June 13, 1960, determining overassessments for the years 1953 to 1956, inclusive, and a deficiency for 1957. *315 Their share of the partnership income for 1957 was increased $21,196.62. On May 19, 1961, statutory notices of deficiency were mailed to petitioners determining deficiencies for the years 1955 and 1956 (Docket Nos. 93887 and 93888). The statutory notices of May 19, 1961, determined, among other detailed adjustments, that the accounts receivable of the Company were to be increased and the cost of sales was to be decreased for the years 1955 and 1956. These notices of deficiency computed deficiencies on the basis of a revival of agent Black's determinations. The respondent concedes that these deficiencies are erroneous if we should sustain him in his contention that the partnership initiated the change in accounting in 1957. On May 24, 1961, statutory notices of deficiency were mailed to petitioners (Docket Nos. 93932, 93933) for 1958 and 1959. The statutory notices issued to T. I. and Hazel Welch and to Thompson I. Welch and estate of Jocelyne Welch, deceased, on May 24, 1961, made adjustments to partnership income for the years 1958 and 1959, including additional partnership income of $6,948.21 for each year. The $6,948.21 additional income for each year is for pre-1954 adjustments *316 under section 481 of the 1954 Code, computed for 1957, and the computation is explained in the June 13, 1960, statutory notices to the petitioners. A claim for refund of taxes, Form 843, made by T. I. and Hazel Welch for the years 1954 was dated December 7, 1959, and received in the Internal Revenue Service office at Amarillo, Texas, on December 8, 1959. Claims for refund of taxes, Form 843, made by T. I. and Hazel Welch for the years 1953 to 1956, inclusive, dated December 3, 1960, were received on April 15, 1961, by the district director of internal revenue at Dallas, Texas. A claim for refund of taxes, Form 843, made by Thompson I. Welch for himself and for the estate of Jocelyne Welch, deceased, for the year 1954 was dated December 7, 1959, and received in the Internal Revenue Service office at Amarillo on December 8, 1959. Claims for refund of taxes, Form 843, made by Thompson I. Welch for himself and for the estate of Jocelyne Welch, deceased, for the years 1953 to 1956, inclusive, were dated December 3, 1960, and were received on April 15, 1961, by the district director of internal revenue at Dallas. Opinion BLACK, Judge: Petitioners offered no evidence to substantiate *317 claimed deductions for estimated grain shrinkage in 1958 and 1959 and we will assume that petitioners have conceded this issue. The contested adjustments in this case relate to a change in the method of accounting used for computing the income of Welch Grain Company. Petitioners T. I. Welch and Thompson I. Welch are equal partners in the Company. The partners and their wives have remained on the cash basis throughout all the years in issue. The adjustments were made under the provisions of section 481 of the 1954 Code as amended by the Technical Amendments Act of 1958 [2] and the total amount of the contested adjustments made under section 481 of the 1954 Code as amended equals the value of the closing 1953 inventory and the closing 1953 accounts receivable of the partnership. The parties are in disagreement as to who initiated the change and in what year the change was made. Petitioners contend that a revenue agent, George A. Black, initiated the change in the Company's accounting method beginning with the year 1954 by changing the partnership from the cash method either to the accrual method or to a hybrid method, the cash plus inventory method. Respondent contends that the partnership *318 voluntarily changed its method of accounting from the cash method to the accrual method in 1957 and that adjustments are applicable as to inventory and accounts receivable under the provisions of section 481. In the alternative, if we find petitioners did not initiate the change in accounting method, then respondent contends that the deficiencies determined in the statutory notices *319 dated May 19, 1961, for the years 1955 and 1956 (Docket Nos. 93887 and 93888) are correct. Respondent concedes they are incorrect if we find that petitioners initiated the change in method of accounting in 1957. We shall first consider the 1957 return of the partnership. In applying the provisions of section 481 to the partnership return for 1957, three questions are raised by the terms of that section: (1) Who initiated the change in the method of accounting, (2) was the computation of income for 1957 under a method of accounting different from the method under which income was computed for 1956 (the preceding year), and (3) what adjustments are necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted. The facts indicate that the partnership return for 1957 was filed on the accrual method of accounting consistent with the partnership's books and records which had been changed from a cash basis to the accrual method in 1957. The original partnership return for 1956 computed income on a cash basis although the partnership did not utilize a strict cash method for computing income in 1956 or earlier years. In 1957 the internal revenue *320 agent who was examining the returns of the partnership for 1954, 1955, and 1956 advised the partners that the partnership returns for 1957 and subsequent years should include inventories in full. He prepared a statement of opening inventories for 1957 and delivered it to the partnership and suggested that it be given to the accountant. We have previously held in that a distinction must be made between a situation where the revenue agent merely suggests that the taxpayer's income for the next tax period be computed under a different method of accounting and a situation where the revenue agent instructs that such change be made. See also (C.A. 4, 1960), affirming , certiorari denied . We find in the present case that the agent's advice amounted to nothing more than a suggestion that the partnership return for 1957 report income computed under an accounting method wherein inventories were to be utilized in full. We cannot conclude from the evidence presented that the agent pressured the petitioners to change under threat *321 of finding other deficiencies. It seems to us that the partnership's change to the accrual system was voluntary and therefore initiated by the partnership. The present case is distinguishable from (C.A. 10, 1962), on which petitioners rely since in that case the court specifically found that the change in accounting method would not have been made except in response to the investigating agent's demands. While we do not accept respondent's position that the revenue agent does not have the authority to initiate a change in method of accounting for purposes of computing income, we do not find that such authority was exercised here, cf. Nor do we believe that the agent's action taken with respect to the 1954, 1955, and 1956 partnership returns constituted a change in method of accounting. The agent was merely trying to take remedial action and it did not amount to change in method of accounting. The partnership was not following a proper accounting technique with respect to its notes payable. When the partnership bought grain with money borrowed from the bank, it would not treat that grain as a purchase *322 of goods. Instead, the partnership considered the bank to be the owner of the grain and the partnership would consider the purchase to have been made when the loan was paid. Agent Black's adjustments for 1954, 1955, and 1956 merely attempted to correct this improper accounting treatment. In any event, Agent Black's recommendations were not adopted by the respondent and his deficiency notices dated June 30, 1960, recomputed the income of the partnership under the method of accounting originally used by the partnership in 1955 and 1956. Overassessments in tax for these years were determined as to the petitioners. We conclude that petitioners initiated the change in method of accounting in 1957, changing the partnership to the accrual method of accounting and therefore the adjustments determined by the respondent in the statutory notices dated June 30, 1960, were proper. Petitioners have abandoned the issue concerning the disallowance of deductions for estimated grain shrinkage in 1958 and 1959; no evidence was offered to support any such deduction. The only other contested adjustments determined for 1958 and 1959 come under the provisions of section 481(b)(4) under which certain of *323 the adjustments made in 1957 due to the change in method of accounting are spread over a 10-year period. The statute in question requires that this be done. Accordingly, we find for the respondent in Docket Nos. 88953, 88955, 93932, and 93933, the deficiencies determined in the statutory notices dated May 19, 1961, for the years 1955 and 1956 (Docket Nos. 93887 and 93888) are incorrect and respondent so concedes. We find for the petitioners as to these years. Decisions will be entered for the respondent in Docket Nos. 88953, 88955, 93932, and 93933. Decisions will be entered for the petitioners in Docket Nos. 93887 and 93888. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Thompson I. Welch, Individually, and Estate of Jocelyne J. Welch, Deceased, Thompson I. Welch, Independent Executor, Docket No. 88955; Thompson I. Welch, Individually, and Estate of Jocelyne J. Welch, Deceased, Thompson I. Welch, Independent Executor, Docket No. 93887; T. I. Welch and Hazel A. Welch, Docket No. 93888; T. I. Welch and Hazel A. Welch, Docket No. 93932; and Thompson I. Welch, Individually, and Estate of Jocelyne J. Welch, Deceased, Thompson I. Welch, Independent Executor, Docket No. 93933.↩
2. SEC. 481. ADJUSTMENTS REQUIRED BY CHANGES IN METHOD OF ACCOUNTING. (a) General Rule. - In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change") - (1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income fof the preceding taxable year was computed, then (2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.↩